# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 11, 2024        Decided April 25, 2025

No. 22-5235

ACCURACY IN MEDIA,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-00814)

*John H. Clarke* argued the cause and filed the briefs for appellant.

*Graham White*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General at the time the brief was filed, and *Mark B. Stern*, Attorney. *Thomas Duffey* and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

Before: HENDERSON, MILLETT, and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Accuracy in Media filed a Freedom of Information Act request with the Central Intelligence Agency that seeks governmental records showing whether American service members imprisoned or missing in action from the Vietnam War are still alive in Laos or Vietnam. At issue in this appeal is whether the CIA adequately searched its operational files for relevant information about those service members. Because the CIA's truncated search terms could not reasonably have been expected to capture relevant records, we reverse and remand this case to the district court for further proceedings consistent with this opinion.

**I**

**A**

The Freedom of Information Act, 5 U.S.C. § 552, commonly known as FOIA, is "a means for citizens to know what their Government is up to." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (internal quotation marks and citation omitted). Congress enacted FOIA to allow members of the public to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny[.]" *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).

Initially, FOIA applied to the CIA in the same way as other federal agencies. But in 1984, Congress enacted the CIA Information Act, 50 U.S.C. § 3141. That Act authorized "[t]he Director of the [CIA], with the coordination of the Director of National Intelligence, [to] exempt operational files of the [CIA] from the provisions of [FOIA] which require publication or

disclosure, or search or review[.]" *Id.* § 3141(a). Operational files are:

> (1) files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services;

> (2) files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems; and

> (3) files of the Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources[.]

*Id.* § 3141(b).

Through the CIA Information Act, Congress sought to reduce the "expenditure of time and money on fruitless search and review of sensitive operational records [which] contribute[d] nothing to the FOIA goal of releasing non-exempt information to the public[.]" *Judicial Watch, Inc. v. CIA*, 310 F. Supp. 3d 34, 38 (D.D.C. 2018) (quoting H.R. Rep. No. 726, 98th Cong., 2d Sess., pt. 1, at 5 (1984)). As a result, the Act exempts most CIA operational files from FOIA's requirements.

The CIA Information Act, though, "carve[s] out three areas in which requestors, notwithstanding the statutory bar,

might nonetheless receive materials." *Sullivan v. CIA*, 992 F.2d 1249, 1251–1252 (1st Cir. 1993). Those are:

> (1) [information concerning] United States citizens or aliens lawfully admitted for permanent residence who have requested information on themselves pursuant to [FOIA or the Privacy Act of 1974];
>
> (2) any special activity the existence of which is not exempt from disclosure under [FOIA]; or
>
> (3) the specific subject matter of an investigation by [certain legislative or executive agency bodies] for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity.

50 U.S.C. § 3141(c).

Records "concerning" any of those three topics are subject to FOIA's ordinary search and disclosure obligations. 50 U.S.C. § 3141(c). In addition, the statute allows a FOIA requester to seek records on the ground that, among other things, the records sought, while perhaps once operational, are no longer properly categorized as such. *Id.* § 3141(f)(4)(A). If the court finds that the CIA improperly withheld requested records under the CIA Information Act, the court "shall order the [CIA] to search and review the appropriate exempted operational file or files for the requested records and make such records, or portions thereof, available" under FOIA's terms. *Id.* § 3141(f)(6).

5

**B**

This appeal is the latest stage in a long-running effort by Accuracy in Media ("AIM") and others to obtain information on American prisoners of war and those missing in action from the Vietnam War era.

In February 2003, AIM, Roger Hall, and Studies Solutions Group (collectively, "original requesters" or "plaintiffs") sent multiple FOIA requests to the CIA. Two requests are relevant here:

> [1] Records relating to 44 individuals who allegedly are Vietnam era POW/MIAs, and whose next-of-kin have provided privacy waivers to Roger Hall * * * and records relating to those persons * * * whose primary next-of-kin (PNOK) have authorized [through general waivers] the release of information concerning them.

> [2] All records on or pertaining to any search conducted regarding any other requests for records pertaining to Vietnam War POW/MIAs, including any search for such records conducted in response to any request by any congressional committee or executive branch agency.

J.A. 1206.

After receiving no response to the requests, the original requesters filed suit in May 2004 under 5 U.S.C. § 552. Over the ensuing years, a series of court orders and rounds of summary judgment briefing have substantially narrowed the

scope of this dispute.[1]  In the course of the litigation, the CIA released thousands of records "tending to shed light on the fates of prisoners of war and those [persons] otherwise reported as missing in action during the Vietnam conflict."  *Hall v. CIA*, 268 F. Supp. 3d 148, 159 (D.D.C. 2017).

By 2017, the litigation came to focus on the adequacy of the CIA's search with respect to the two categories of documents identified above.  *Hall*, 268 F. Supp. 3d at 153, 160–163.  In 2019, the court invoked 50 U.S.C. § 3141(f)(4) and ordered the CIA to review its operational files after plaintiffs filed "a sworn written submission based on personal knowledge or otherwise admissible evidence" suggesting "improper exemption of operational files."  *Hall v. CIA*, No. 04-cv-814, 2019 WL 13160061, at *2 (D.D.C. Aug. 2, 2019) (quoting 50 U.S.C. § 3141(f)(4)(A)–(B)).  Plaintiffs' submission included an affidavit from former Congressman Bob Smith swearing "without any equivocation that [the CIA is] still holding documents that should be declassified" and that "could and should be released as they pose no national security risk."  *Id.* at *2 (quotation marks omitted).  In light of plaintiffs' submission, the district court ordered the CIA to search its operational files for the "disclosure of, among other things, 1,400 live sighting reports that were reportedly displayed at Congressional briefings attended by CIA employees, as well as records of imagery and reconnaissance and rescue operations."  Order, *Hall v. CIA*, No. 04-cv-814 (D.D.C. March 31, 2020), ECF No. 345.

---

[1]  *See, e.g.*, *Hall v. CIA*, No. 04-cv-814, 2019 WL 13160061 (D.D.C. Aug. 2, 2019); *Hall v. CIA*, 268 F. Supp. 3d 148 (D.D.C. 2017); *Hall v. CIA*, 115 F. Supp. 3d 24 (D.D.C. 2015); *Hall v. CIA*, 881 F. Supp. 2d 38 (D.D.C. 2012); *Hall v. CIA*, 668 F. Supp. 2d 172 (D.D.C. 2009).

A year later, after its search was complete, the CIA reported that it had searched its operational files and had located no responsive records. J.A. 155. The agency submitted a declaration explaining that it had used search terms "such as": POWs, prisoners of war, MIA, missing in action, Vietnam, task force, House Special POW, image, "and different combinations and variations of those search terms." J.A. 76 (Blaine Decl. ¶ III.12); *see also* J.A. 55 (Supp. Blaine Decl. ¶ III.2).

In July 2022, the court granted the CIA's motion for summary judgment. *Hall v. CIA*, No. 04-cv-814, 2022 WL 2528102, at *1 (D.D.C. July 7, 2022). In response to AIM's argument that the CIA failed to produce documents that AIM believes the CIA possesses, the district court reasoned that, just because a document may have existed at one time, does not mean it still exists, and "plaintiffs' evidence does not establish, or even significantly suggest, that the files referenced are in the CIA's current operational files." *Id.* at *5. The court also ruled that the CIA's search terms were sufficient as they "appear[ed] to be reasonably likely to have yielded the files sought by plaintiffs if they were indeed present in the CIA's operational files." *Id.*

AIM is the only plaintiff that appealed that summary judgment ruling.

**II**

The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

We review *de novo* the adequacy of the CIA's search. *Protect Democracy Project, Inc. v. National Security Agency*, 10 F.4th 879, 884 (D.C. Cir. 2021).

**III**

In this case, the CIA does not challenge the district court order invoking 50 U.S.C. § 3141(f) and requiring it to search its operational records. So we assume without deciding that the order to search operational files was appropriate. Nor does AIM challenge the scope of that search as defined by the district court to cover 1,400 live-sighting reports and imagery of rescue operations. Order, *Hall v. CIA*, No. 04-cv-814, ECF No. 345. According to AIM, those sightings occurred in both Laos and Vietnam. AIM Opening Br. 18–19, 36–37; *see, e.g.*, J.A. 229–230, 443–446.

To prevail on summary judgment, the burden was on the CIA to show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *American Oversight v. United States Dep't of Health & Human Servs.*, 101 F.4th 909, 923 (D.C. Cir. 2024) (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)) (quotation marks omitted). The adequacy of the CIA's search "turns on 'a standard of reasonableness and depends * * * upon the facts of each case.'" *Id.* (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). In determining the adequacy of the CIA's search, this court may rely on a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Ancient Coin Collectors Guild v. United States Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Valencia-Lucena*, 180 F.3d at 326) (quotation marks omitted).

In conducting its search, the CIA's declaration said that it used search terms "such as":

> "POWs," "prisoners of war," "MIA," "missing in action," "Vietnam," "task force," "House Special POW," "image[.]"

J.A. 76 (Blaine Decl. ¶ III.12). The declaration added that the CIA used those terms, as well as "different combinations and variations of those search terms[,]" and searched for "records through the date of the search." *Id.*; *see also* J.A. 55 (Supp. Blaine Decl. ¶ III.2).

On their face, the CIA's search terms are inadequate to have uncovered the relevant documents.

First, the search terms have notable omissions. While the CIA looked for records with the word "Vietnam," it inexplicably omitted the country of "Laos," even though the live-sighting reports and imagery records on which AIM relied referenced prisoners of war located in Laos. AIM Opening Br. 14–16, 18–22; J.A. 1369 (Barry Toll Aff.); J.A. 1151–1152 (Lynn O'Shea Aff.); J.A. 1390 (John LeBoutillier Aff.).

In addition, the CIA does not explain why it left out terms like "live sighting" even though that word is a key feature of the search's prescribed scope. Confusingly, the search used "image," but not 'imagery," "reconnaissance," or "rescue," even though the request seeks information about all three. Why the search was confined to "image" and not "sighting" is similarly unexplained and indiscernible. Likewise, the CIA cannot explain why it uses "House Special POW" but not Senate or Senate Select POW, even though AIM's evidence, including an affidavit from former Senator Bob Smith, references live-sighting reports discovered by investigators on the Senate Select Committee on POW/MIA Affairs in the early 1990s. J.A. 961, 963 (Bob Smith Aff.).

Second, the identified search terms are an unexplained mismatch for the scope of the FOIA request. The CIA did not explain how phrases like "task force" or "House Special POW" would capture records about the "1,400 live sighting reports that were reportedly displayed at Congressional briefings attended by CIA employees, as well as records of imagery and reconnaissance and rescue operations[.]" Order, *Hall v. CIA*, No. 04-cv-814, ECF No. 345. There is little to no overlap between many of the terms and the search's prescribed scope.

Third, in using "POWs," "prisoners of war," "MIA," or "missing in action," the CIA did not explain whether only singular or plural forms of those terms were employed and whether the use of one excludes the other, given the CIA's particular search tools and methods. Oral Arg. Tr. 19:2–19:12 (the government unable to explain "whether it[s] [search] gets singular or plural" forms of each term).

We afford agencies reasonable discretion in crafting their search terms. But discretionary judgments still must be "reasonably calculated to uncover all relevant documents[,]" and agencies may not "omit from [a] search obvious alternative terms without a detailed justification." *American Oversight*, 101 F.4th at 923 (quoting *Valencia-Lucena*, 180 F.3d at 325).

The CIA's supplemental declaration claimed that it omitted "more precise or narrowed terms because utilizing more specific search terms would not have necessarily been effective in identifying documents potentially responsive to plaintiffs' request, and may have inadvertently excluded otherwise responsive documents that failed to contain the more specific search terms." J.A. 55 (Supp. Blaine Decl. ¶ III.2).

The CIA's worry about further narrowing the search is no answer to the problem of it not being broad enough to begin with.  More to the point, nothing in the CIA's affidavit explains how the use of one term excludes using another, or why terms cannot be used in separate searches to turn up different sets of documents.  A search for records using both "Vietnam" and "Laos" would likely produce more documents than one only for "Vietnam," and would seem to be the reasonable way to find records about alleged sightings in Laos.  At a minimum, the CIA failed to adequately explain why fewer search terms would yield more results when, in this case, logic suggests the opposite is true.

The CIA argued that the terms provided in the declaration were only a sample of the terms used.  *See* J.A. 76 (Blaine Decl. ¶ III.12); J.A. 55 (Supp. Blaine Decl. ¶ III.2) ("The search terms * * * were a selection of those used.").  But the CIA has never disclosed the full list of terms used.  This court can only discern reasonableness based on the record provided by the government, which bears the burden of proof.  *American Oversight*, 101 F.4th at 923.  We cannot just assume a broader search occurred in an informational vacuum.  The only list provided, and on which the district court relied in granting summary judgment, suffers from material and obvious omissions; the CIA has not provided any additional information; and so the search is inadequate.

At bottom, the CIA's description of its search terms raises more questions than answers, especially when the agency is unable to explain why key terms were omitted and how the listed terms were used, including whether single terms excluded their plurals.  As a result, the CIA has failed to show "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *American Oversight*, 101 F.4th at 923 (quoting *Valencia-Lucena*, 180

F.3d at 325); *cf. Porup v. CIA*, 997 F.3d 1224, 1237 (D.C. Cir. 2021) (holding that the "sworn assertions were sufficient to carry the [a]gency's burden as to its search terms and methodology" where there was no basis for concluding that— even if the example search terms were the only ones used— sections of responsive records might have been overlooked). Because the CIA must either engage in a new search or submit a supplemental affidavit that identifies adequate search terms and how they were used, we need not address AIM's additional arguments.[2]

## IV

For the foregoing reasons, we reverse the district court's grant of summary judgment to the CIA and remand the case for further proceedings consistent with this opinion.

*So ordered*.

---

[2] Specifically, we do not decide whether (1) the CIA adequately described its search, (2) positive indications of overlooked records rendered the search inadequate, or (3) the CIA's motives should have been considered by the district court.